# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6027 | **DATE** | 10/25/2001 |
| **CASE TITLE** | US ex rel. Dan Young vs. Donald N. Snider, Jr. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  **ENTER MEMORANDUM OPINION:**  Young's petition for a writ of habeas corpus is denied.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | OCT 26 2001 | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | FOR DOCKETING 01 OCT 25 PM 12: 45 | | date mailed notice | |
| | SCT courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DAN YOUNG, | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | 01 C 6027 |
| DONALD N. SNIDER, JR., DIRECTOR DEPARTMENT OF CORRECTIONS, STATE OF ILLINOIS, | ) ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on Dan Young's ("Young") petition for a writ of habeas corpus. For the reasons set forth below, the court declines to issue the writ.

## BACKGROUND

The following facts are taken from the state court proceedings in this case. On October 14, 1990, Kathy Morgan's body was found in her apartment. She had been brutally raped and murdered. Her apartment building had also been set on fire. The investigation of these crimes remained open for over a year until the arrest of a man named Harold Hill ("Hill") on an unrelated charge. Hill subsequently implicated himself and Young as co-participants in the crimes against Kathy Morgan. Based on Hill's

confession, the police arrested Young who similarly confessed to the crimes after receiving Miranda warnings. Young was charged with first degree murder, aggravated criminal sexual assault, kidnaping, and arson.

Before his trial, Young moved to suppress his confession based on his alleged incapacity to understand and therefore effectively waive his Miranda rights. Young has a documented I.Q. of 56. Young was examined a number of times by at least three different experts to ascertain both whether he understood the Miranda warnings he waived and whether he was fit for trial. Dr. Roni Seltzberg ("Dr. Seltzberg") conducted a fitness evaluation of Young on June 11, 1993. For the purposes of her evaluation, she reviewed Young's medical reports up through 1992 and knew that Young was taking psychotropic medications to counter his aggressive behavior. She concluded that Young was able to understand the charges against him. She also concluded that Young could cooperate with counsel and was fit for trial. Dr. Albert Stipes ("Dr. Stipes") examined Young On June 12, 1992 and found him fit for trial provided his lawyer knew of his intellectual limitations. He came to the same conclusion after examining Young on July 17, 1992 and again in 1993. With respect to Young's understanding of Miranda warnings, Dr. Stipes concluded that Young could understand simplified Miranda warnings. Finally, Dr. Fauteck found Young fit after an examination on May 19, 1993

In addition to the testimony of these doctors, the state trial court heard the testimony of another expert and that of the Assistant State's Attorney Mike Rogers ("ASA Rogers"). ASA Rogers had read Young his Miranda warnings in a simplified manner. The trial court also considered the testimony of five officers who had observed or dealt with Young at various times during this arrest and his eleven other criminal arrests. One officer, Officer Bartkowicz, testified that although Young began speaking to him about the crime for which Officer Bartkowicz had arrested him, Young stopped doing so immediately after the officer informed him of his rights under Miranda. There was also evidence that Young initially denied and then minimized his role in the crimes with which he was currently charged. After considering all the evidence before him, the trial judge, the Honorable Thomas P. Durkin, found that Young did understand and knowingly waive his rights under Miranda.

The case was subsequently tried by a jury. The trial began on September 14, 1994 and ended on September 20, 1994. The evidence against Young consisted mostly of his confession and the testimony of a forensic odontologist who concluded that Young had caused a bite mark found on Kathy Morgan's body. The jury found Young guilty of all the crimes with which he was charged. Young appealed his convictions. One of the bases of his appeal was that his confession should have been suppressed because he did not knowingly and intelligently waive his Miranda rights. The Illinois Appellate Court

reviewed the evidence in the record and ultimately affirmed the validity of Young's Miranda waiver.

Another basis of Young's appeal was that the trial judge and his attorney, Steven Greenberg, failed to order a fitness hearing before or during his trial pursuant to 725 ILCS 5/104-21(a) and 725 ILCS 5/104-11. These provisions state that a criminal defendant who is taking psychotropic medications during trial is entitled to a fitness hearing. The provisions also state that a criminal defendant's attorney or the court *sua sponte* must order a fitness hearing if there is *bona fide* doubt of the defendant's fitness. Young argued that his use of psychotropic medications caused him to feel sleepy at least twice and to engage in certain inappropriate behaviors during the trial.[1] Accordingly, he argued this created a *bona fide* doubt as to his fitness and he should have had a fitness hearing. Because the Illinois Appellate Court found that the record contained insufficient evidence with respect to the nexus between Young's use of psychotropic medication and his inappropriate courtroom behavior, the court remanded the case for the limited purpose of conducting a Burgess hearing to determine whether the failure to hold a fitness hearing

---

[1] These behaviors included: attacking his co-defendant; a verbal outburst during the testimony of a witness and at least one other time; insulting Judge Durkin; putting his head in his arms; tapping his fingers; and twisting his arm once into a pretzel-like position.

denied Young due process of law. Young filed a Petition for Leave to Appeal, which the Illinois Supreme Court denied on October 2, 1996.

The Burgess hearing was conducted by the Honorable Daniel M. Locallo who issued a written opinion on May 17, 1999 explaining his conclusion that Young was fit for trial. Both Dr. Seltzberg and Dr. Stipes testified at this hearing. Dr. Seltzberg's testimony was based on her previous examination of Young in 1993, Young's medical records since that time, and the transcript of Young's testimony at trial. She reiterated that Young was taking the psychotropic drugs not because he was psychotic, but to counter his aggressive behavior. Additionally, the fact that he had continued to take the drugs during his trial did not change her conclusion in 1993 that he was fit for trial because even if the drugs caused any physiological side effects in Young, they did not affect his cognitive function. Further, she explained that Young had not complained of any side effects from the drugs when she examined him and that any such side effects, such as drowsiness, would have dissipated over time as Young would have become more tolerant to the drugs. Dr. Seltzberg opined that some of Young's behaviors appeared to be due to his alcohol dependency. Moreover, she opined that Young was likely sleepy during trial because he was awakened at 4:00 am everyday.

Dr. Stipes similarly concluded that Young was fit for trial. His conclusion was based on his examinations of Young before trial and another examination of Young on

November 14, 1994, after the trial but before sentencing. Dr. Stipes also reviewed a medical report dated November 7, 1994 signed by another doctor, Dr. Blumstein, which stated Young was fit for trial. Though he did not attend Young's trial, Dr. Stipes reviewed the transcript of Young's testimony. Greenberg had also informally told Dr. Stipes about some of Young's behavior during the trial.

Like Dr. Seltzberg, Dr. Stipes testified that the psychotropic medications were given to Young to treat his aggressiveness. He also explained that, assuming the behaviors Young engaged in during trial were side effects of the medications, they would not affect his fitness for trial. Dr. Stipes testified that, during the November 1994 exam, Young was exhibiting signs of one side effect of the medications he was taking. Specifically, Young showed signs of akathisia, a condition that causes patients to feel that they have to keep moving; it may manifest itself in a continuous tapping of the foot or moving of the hand. However, Dr. Stipes explained that this movement did not affect Young's cognitive functioning or Young's ability to communicate with Dr. Stipes. Dr. Stipes acknowledged that drowsiness is a side effect of the medications Young was taking, but stated that Young did not complain of drowsiness during his 1992 examinations or during the November 1994 examination. Like Dr. Seltzberg, he explained that the sedative effect of the medication is tolerated over time and he noted that Young had been taking the medication for over two years. He also explained that the

fact that Young may have not taken his medication at various times during trial would not affect his fitness for trial. Accordingly, he concluded that Young's use of the psychotropic drugs did not make him unfit for trial.

Besides the expert testimony, Judge Locallo also heard the testimony of those present at the trial. Judge Durkin was one such witness. Although Judge Durkin testified that Young did engage in certain inappropriate courtroom behavior, Young's behavior did not create in him a *bona fide* doubt as to Young's fitness. Judge Durkin testified that Young appeared to be sleeping at two points during the trial, and that Young told him he was sleepy because the sheriffs woke him up at four o'clock in the morning. Judge Durkin also stated that he knew of Young's limitations and, therefore, was lenient with him.

Judge Locallo additionally considered the testimony of Greenberg and an Assistant Public Defender as to the nature of Young's inappropriate behavior. Judge Locallo did not find Greenberg's testimony that he felt like a "babysitter" credible, noting that if Greenberg truly had *bona fide* doubt as to Young's fitness he would have requested a fitness hearing. Greenberg had requested a behavior clinical exam of Young after the verdict and before the sentencing. Finally, Judge Locallo considered the testimony of the prosecutor who denied observing much of the behavior Young was

described as engaging in during trial. After considering all the evidence, Judge Locallo concluded that Young was fit for trial.

Young appealed to the Illinois Appellate Court. Young argued that: the retrospective fitness hearing violated his due process rights; he receive ineffective assistance of counsel because his lawyer did not request a fitness hearing before or during trial; and the state did not sustain its burden of proving his fitness. The court affirmed the trial court. The court explained that the mere use of psychotropic medication does not create *bona fide* doubt of fitness to stand trial and that the other evidence in the record did not create *bona fide* doubt as to Young's fitness. Because there was no *bona fide* doubt as to his fitness for trial, the court held that Young's due process rights and his right to effective assistance of counsel were not violated when the trial court and his lawyer failed to order a fitness hearing. Young filed a Petition for Leave to Appeal, which the Illinois Supreme Court denied on April 4, 2001. Young has not petitioned the United States Supreme Court for writ of certiorari.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "habeas relief shall not be granted unless the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination

of the facts in light of the evidence presented to the State court proceeding.'" Schaff v. Snyder, 190 F.3d 513, 521 (7th Cir. 1999) (quoting 28 U.S.C. §§ 2254(d)(1) & (2)). The Seventh Circuit has explained the narrow scope afforded federal review of state court decisions in habeas petitions. Schaff, 190 F.3d at 521-23. To secure a writ, a "petitioner first must show that the Supreme Court has 'clearly established' the propositions essential to [his] position." Id. at 522. "Only 'clearly established' rules could be applied on collateral attack; and a rule was not 'clearly established' unless it was compelled by existing precedent." Id. "A petitioner must have a Supreme Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle as of the time of his direct appeal." Id.

The petitioner "must next show that the state court's decision was either 'contrary to' clearly established Supreme Court case law or, alternatively, was an 'unreasonable application' of Supreme Court case law." Id. Whether the state ruling was "contrary to" Supreme Court case law is a legal determination that [federal courts] review de novo. The term "contrary to" means "conflict with." Williams v. Taylor, 529 U.S. 362, 388 (2000). In other words, the state court decision is "diametrically different" or "opposite" to an established Federal law. Williams, 529 U.S. at 388.

Whether the state court's decision involved an "unreasonable application" of clearly established Supreme Court precedent is a mixed question of law and fact that [federal courts] traditionally also review de novo but with a grant of deference to any

reasonable state court decision. See Schaff, 190 F.3d at 522. If the state court's determination was "reasonable, that is at least minimally consistent with the facts and circumstances of the case, [federal courts] shall uphold the state court ruling, even if it is not well reasoned or fully reasoned, or even if it has one of several equally plausible outcomes." Id. (quoting Hall v. Washington, 106 F.3d 742, 748 (7th Cir. 1997)). With these principles in mind, the court turns to Young's arguments in support of his habeas petition.

## DISCUSSION

Young's habeas petition contains three main arguments. First, he argues that the his due process rights were violated because he did not receive a fitness hearing during his trial even though, as he claims, his use of psychotropic medication created *bona fide* doubt as to his fitness. Second, Young asserts that his lawyer's failure to order a fitness hearing during his trial amounts to ineffective assistance of counsel. Finally, he claims that his confession should have been suppressed because he did not knowingly and intelligently waive his rights under Miranda.

## I.    Due Process

Young argues that, under the Illinois statutory scheme for criminal procedure, the fact that he was on psychotropic drugs during his trial creates *bona fide* doubt of his fitness and, therefore, he should have been provided with a fitness hearing at the time of

his trial. He argues that by not providing him with a fitness hearing at the time of his trial, the state courts below violated not only his statutory rights under the Illinois Code of Criminal Procedure, but also his due process rights under the United States Constitution. Young's interpretation of the relevant Illinois statutory provisions is contrary to the Illinois Supreme Court's recent interpretation of them. The Illinois Supreme Court has explained that a violation of the relevant statutory provision is not a constitutional violation; noncompliance does not in and of itself equate with a due process violation. People v. Mitchell, 189 Ill. 2d 312, 727 N.E.2d 254 (2000). In so holding, the Illinois Supreme Court overruled its decision in People v. Brandon, 162 Ill.2d 450, 643 N.E.2d 712 (1994). Young asserts that the Illinois Supreme Court's decision is improvident and calls this court to evaluate it.

This court does not find it necessary or proper to review the Illinois Supreme Court's interpretation of an Illinois statutory provision in the context of this habeas petition. The question on habeas review is whether the defendant's federal due process rights were violated. See Balfour v. Haws, 892 F.2d 556, 562 (7th Cir. 1989). While compliance with Illinois statutory provisions on fitness may adequately safeguard a criminal defendant's federal due process rights, such provisions are not mandated by the Federal Constitution. See Balfour, 892 F.2d at 562; United States ex rel. Mireles v. Greer, 736 F.2d 1160, 1166 (7th Cir. 1984). Moreover, a fitness hearing "is not an end in itself." Eddmonds v. Peters III, 93 F.3d 1307, 1316 (7th Cir. 1996). The ultimate

issue under the Federal Constitution is not whether there should have been a fitness hearing pursuant to a state statutory scheme, but whether Young was fit for trial. See Eddmonds, 93 F.3d at 1316; Balfour, 892 F.2d at 562. Therefore, the court now turns to the federal standards for fitness.

A criminal defendant has a due process right not to be tried if he is unable to assist in his own defense. Pate v. Robinson, 383 U.S. 375, 378 (1966). The issue of a defendant's competency to stand trial centers on whether he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960). As such, a mentally ill defendant may be found competent if he meets this standard. See Eddmonds, 93 F.3d at 1314 (citing Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) (stating "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial")).

A defendant is entitled to a hearing on his competency if he raised a *bona fide* doubt as to his competency. United States ex rel. Foster v. DeRobertis, 741 F.2d 1007, 1011 (7th Cir. 1984). A post-trial determination of whether there is *bona fide* doubt as to a defendant's competency "should be based on evidence of [his] irrational behavior, his demeanor at trial, and any prior medical opinion." DeRobertis, 741 F.2d at 1011 (quoting Drope v. Missouri, 420 U.S. 162, 180 (1975)). To challenge the procedures

used in determining his fitness, a defendant must present facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental capacity to meaningfully participate and cooperate with counsel during his trial." Balfour, 892 F.2d at 561. Finally, in the context of habeas corpus, a state trial court's finding of fitness to stand trial is a factual finding that the reviewing federal court must presume is correct. Id. (citing Maggio v. Fulford, 462 U.S. 111 (1983)); United States ex rel. Jenkins v. Dobucki, 12 F. Supp.2d 827, 831 (7th Cir. 1998); Balfour, 892 F.2d at 560; Mireles, 736 F.2d at 1167.

Here, the state courts deemed Young fit to stand trial and the facts support their conclusion. The trial judge who presided over Young's criminal trial, Judge Durkin, observed Young over the course of his trial. He was aware of the psychiatrists pre-trial examinations finding him fit for trial. While he witnessed some of Young's inappropriate courtroom behavior, that behavior was not so strange as to make Judge Durkin believe Young might have become unfit for trial. Nor did Young's lawyer, Greenberg, raise the issue of Young's fitness during the trial. Balfour, 892 F.2d at 561 (stating trial courts have no choice but to rely to some extent on representations of counsel regarding their client's mental state); United States ex rel. Rice v. Cooper, 1997 WL 282734, at *7 (May 16, 1997). Therefore, those who observed Young during trial did not find him unfit.

In addition, when Young appealed to the Illinois Appellate Court arguing his use of psychotropic drugs made him unfit during trial, the court did not summarily dismiss his argument. Rather the court found it could not resolve the issue because of insufficient facts in the record and, therefore, remanded the case to Judge Locallo for a <u>Burgess</u> hearing in order to determine whether Young's was fit during his trial. If the hearing found he was not, the Illinois Appellate Court stated Young would receive a new trial.

After reviewing all the evidence presented at that hearing, Judge Locallo determined that Young was indeed fit at trial. Judge Locallo set forth the evidence presented at the hearing and the reasoning for his decision in a forty-four page memorandum opinion. His conclusion is supported by the facts. As set forth more fully above, a number of experts examined Young before and after his trial and determined he was fit to stand trial. The experts were aware at all times of Young's use of psychotropic medications and they did not believe the medications affected his fitness for trial. This would be the case, they opined, even if Young exhibited certain physical side effects as a result of the medications. Judge Locallo also heard testimony from those who observed Young during the trial, such as Judge Durkin, Greenberg, and other lawyers. He found the testimony of some more credible than that of others. This court is not in a position to question his credibility determinations.

The Illinois Appellate Court affirmed Judge Locallo's finding of fitness. The court explained that there was no evidence in the record that could support a *bona fide* doubt as to Young's fitness other than Young's use of psychotropic medication. Because the Burgess hearing established that Young's use of psychotropic medication did not affect Young's fitness for trial, the court concluded Young's due process rights were not violated. Accordingly, the court did not afford him a new trial. The court's conclusions are not unreasonable and are amply supported by the trial court's factual findings, to which this court must show a "high measure of deference." Sumner v. Mata, 449 U.S. 539 (1981). Thus, this court finds that Young's due process rights were not violated. Indeed, the state courts took careful steps to ensure as much.

Young argues that the Burgess hearing is not a basis upon which to conclude he was fit for trial because it was a retrospective hearing. In support of his argument, Young relies on three United States Supreme Court cases cautioning against retrospective fitness hearings. See Dusky, 362 U.S at 402; Drope, 420 U.S. at 162; Pate, 383 U.S. at 375. These cases, however, do not impose a ban on retrospective fitness hearings; rather, they represent a warning about their inherent difficulties. The "mere passage of time" does not make a post-trial fitness hearing meaningless. United States ex rel. Bilyew v. Franzen, 686 F.2d 1238, 1247 (7th Cir. 1982) (stating "reliable reconstruction of petitioner's mental status (as of the time of trial) depends less on time than on the state of the record"); Conner v. Wingo, 429 F.2d 630, 639 (6th Cir. 1970)

- 15 -

(explaining if these cases called for a flat bar to retrospective fitness hearings, they would require automatic retrial opportunities for any convicted prisoners and defeat postconviction reviews of prisoners' claims). In this case, the record contains evidence contemporaneous to Young's trial supporting the conclusion that he was fit.

Moreover, some of the difficulties with retrospective fitness hearings that concerned the Supreme Court in Pate and Drope are not present here. One of the Supreme Court's concerns in Pate was that the expert testimony at a retrospective hearing would be based solely on information contained in the printed record. Here, the experts who testified at the Burgess hearing had personally examined Young before his trial. Furthermore, two doctors examined him for fitness during the period after his trial and before his sentencing. The Supreme Court also expressed concern in cases where the defendant does not testify and, therefore, could not be observed. In Pate, the defendant had not taken the stand to testify, making it more difficult to assess his fitness. Similarly, in Drope, the defendant was *absent* during most of his own trial. Here, Young did testify on his own behalf and his demeanor was observed by those at his trial.

Accordingly, the court does not find that the state court proceedings violated Young's due process rights. He was examined numerous times before and after trial with regard to his competency. Indeed, the Illinois Appellate Court ordered a Burgess hearing to determine whether his use of psychotropic medication made him unfit for trial in order to ensure that his due process rights were not violated. The factual findings at

that trial support the conclusion that Young was competent. The state courts' decisions are sound in their reasoning and are certainly neither contrary to nor an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). See Williams, 529 U.S. at 362. Therefore, we cannot grant Young's habeas petition with regard to this claim.

## II.    Ineffective Assistance of Counsel

Young's second argument is that he received ineffective assistance of counsel because Greenberg did not request a fitness hearing during his trial. To establish that his lawyer's assistance was so ineffective as to require a reversal of his conviction, Young must make two showings. See Strickland v. Washington, 466 U.S. 668, 687 (1984). First, Young must show that his lawyer's performance was deficient. Strickland, 466 U.S. at 687. This requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Judicial scrutiny of a lawyer's performance must be highly deferential. Id. at 689.

Second, Young must show that his lawyer's deficient performance prejudiced his defense. Id. at 687. This requires "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. A lawyer's error "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. In some situations, the court will presume prejudice. Id. at 692 (stating prejudice presumed where counsel had conflict of interest).

Otherwise, a defendant "must affirmatively prove prejudice." Id. at 693. In the context of a habeas challenge to a state criminal judgment, a state court conclusion as to ineffective assistance of counsel is a mixed question of fact and law. Id. at 698.

The court addresses the prejudice prong of the Strickland test first, as it may dispose of the issue. Strickland, 466 U.S. at 697; Eddmonds, 93 F.3d at 1316. Young requests that this court presume prejudice in this case. Young, however, provides the court with no United States Supreme Court case applying the presumed prejudice standard where counsel failed to request a fitness hearing. Instead, he relies on Roe v. Flores-Ortega, 528 U.S. 470 (2000). There, the Supreme Court applied the presumed prejudice standard where the defendant's lawyer failed to file a notice of appeal. The Court emphasized that the lawyer's failure to do so resulted in the forfeiture of a judicial proceeding. Young likens an appeal to a fitness hearing and argues that, because he did not receive a fitness hearing during trial, he experienced a forfeiture of a judicial proceeding. This court is not persuaded that Flores-Ortega demands a presumption of prejudice in this case. The court declines to extend the application of the presumed prejudice standard. However, even if we concluded that fitness hearings were analogous to an appeal and qualified as a "judicial proceeding" under Flores-Ortega, Young did not experience forfeiture; a Burgess hearing was held to determine if he was fit at trial.

Because the presumed prejudice standard does not apply, Young must show actual prejudice. Where an ineffective assistance of counsel claim rests on a lawyer's failure to request a fitness hearing, prejudice does not arise merely because a fitness hearing was not held during trial. Eddmonds, 93 F.3d at 1316. The denial of a fitness hearing can be harmless. See id. Accordingly, in determining whether Young was prejudiced by Greenberg's failure to request a fitness hearing during the trial, the proper inquiry is whether Young was in fact unfit to stand trial. Id.; United States ex rel. Jenkins v. Dobucki, 12 F. Supp.2d 827, 832 (N.D. Ill. 1998). As explained above, Young was fit for trial. Consequently, his defense was not prejudiced by the failure to call a fitness hearing during his trial. As such, his ineffective assistance of counsel claim fails.

## III.  Miranda

Young's third argument is that he did not and could not knowingly and intelligently waive his Miranda rights when he confessed to his crimes because of his limited intelligence.[2] As a preliminary matter the court notes that the limited intelligence of a defendant alone will not preclude a finding that the defendant made a

---

[2] A Miranda waiver can be challenged on two distinct grounds: (1) that the waiver was not voluntary, knowing, and intelligent; or (2) that the waiver was involuntary. Henderson, 97 F.3d at 946. While the issue of whether a Miranda waiver was knowing and intelligent is a question of fact, the issue of whether it was involuntary is a question of law. Id. Young has not argued that his Miranda waiver was coerced.

reasoned decision to speak with the police. Henderson v. DeTella, 97 F.3d 942, 946 (7th Cir. 1996) (citing cases). Whether a defendant waived his rights under Miranda knowingly and intelligently is a "fact-dependent issue[] that the state courts are best situated to resolve." Henderson 97 F.3d at 946. Because the state and the defendant often offer conflicting testimony as to whether the defendant waived his rights knowingly and intelligently, "assessing the Miranda waiver thus demands credibility assessments that typically only the trier of fact can make." Id. The state court's "historical findings as to the petitioner's knowledge, understanding, and determination to forgo his Miranda rights are, consequently, entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1)." Id. With these principles in mind, we turn to the state courts' treatment of Young's claim.

The state trial court and the Illinois Appellate Court considered a number of factors in assessing whether Young knowingly and voluntarily waived his Miranda warnings. ASA Rogers testified that he simplified the Miranda warnings for Young and stopped often while reading them to ask Young if he understood them and to ask Young to repeat what they meant. At one point Young stated that the judge is "the dude in black who decides if I'm in trouble," and the state courts found this indicated a rudimentary understanding of Miranda rights. In addition, the arrest for the crimes committed against Kathy Morgan was not Young's first encounter with the criminal justice system; Young had eleven previous arrests. See Henderson, 97 F.3d at 949.

Furthermore, Officer Bartkowicz, who arrested Young on a previous offense, testified that, although Young initially began to discuss that alleged crime with him, Young declined to speak to the officer immediately after the officer informed him of his rights under Miranda. Young also initially denied and then chose to minimize his part in the crimes against Kathy Morgan.

Young argues that all this evidence is outweighed by the fact that three experts testified that Young could not understand the significance of Miranda rights and that the state trial court improperly found the lay witnesses more credible than the experts. This court disagrees. This court will not question the state trial court's credibility determinations. The court notes that, as the Illinois Appellate Court explained, even the experts' testimony supports the conclusion that Young had a basic understanding of Miranda. Dr. Seltzberg opined that Young understood the nature of the crimes against him and understood that if he made an incriminating statement, it could be used to his disadvantage in court. Dr. Stipes testified that Young could understand simplified Miranda warnings. Moreover, these opinions must also be considered in conjunction with these and other experts opinions that Young was competent to stand trial. Cf. Henderson, 97 F.3d at 949.

A review of the facts before the state courts and consideration of their analysis of Young's claim that he did not knowingly and intelligently waive his Miranda rights does not give this court reason to doubt their conclusion that his waiver was valid. The

court does not find that the state courts' conclusion is contrary to nor an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). See Williams, 529 U.S. at 362. Thus, Young's habeas petition is denied on this ground also.

## CONCLUSION

For the foregoing reasons, Young's petition for writ of habeas corpus is denied.

Charles P. Kocoras
United States District Judge


Dated:    October 25, 2001